**In re Robert J. BEAN, Debtor.**

**Bankruptcy No. 99–1085–9P7.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Aug. 23, 2000.

Edward R. Miller, Naples, FL, for debtor.

Richard Johnston, Jr., Kiesel, Hughes & Johnston, Ft. Myers, FL, for Milford Motors, Inc.

Thomas S. Heidkamp, Chapter 7 Trustee, Ft. Myers, FL.

### ORDER ON DEBTOR'S OBJECTION TO AMENDED CLAIM [NO. 35] OF MILFORD MOTORS, INC. (DOC. NO. 107)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTER under consideration in this Chapter 13 case is the Debtor's Objection to Second Amended Proof of Claim Filed By Milford Motors, Inc. (Milford Motors). The Court reviewed the Objection and the record, heard argument of counsel and testimony of witnesses and now finds and concludes as follows:

At all relevant times, the Debtor was a principal and the president of Paradise Motors, Inc. (Paradise) and Paradise Motors of Estero, Inc. (Paradise of Estero), Florida corporations. Laurie Negronski (Negronski) was also an officer of the corporations. Milford Motors was in the business of the retail sale of pre-owned automobiles and trucks.

On June 11, 1998, the Debtor, Negronski and the principal of Milford Motors, George R. Casto (Mr. Casto), executed an agreement entitled, "Agreement Between Paradise Motors, Laurie Russel Negronski, Bob Bean and Milford Motors, Inc." (Agreement). The signature blocks do not reflect that the Debtor and Negronski signed the Agreement as representatives of Paradise or Paradise of Estero. Pursuant to the Agreement, Milford Motors was to furnish vehicles to Paradise for sale to the general public. The Agreement required Paradise to pay for the vehicles as follows:

UPON PURCHASE OF VEHICLES FROM MILFORD MOTORS INC, PARADISE MOTORS MAY FLOAT OR DEFER PAYMENT ON VEHICLES FOR A PERIOD OF 30 DAYS. AT THE END OF 30 DAYS, PARADISE MOTORS MAY PAY THE VEHICLE IN FULL OR PAY 20% OF THE PURCHASE PRICE AND EXTEND THE BALANCE DUE FOR AN ADDITIONAL 15 DAYS. AT THE END OF THE EXTENDED 15 DAYS, THE BALANCE DUE ON THE VEHICLE MUST BE PAID IN FULL.

(Debtor's Exh. 2)

The Debtor also executed an untitled document (Supplemental Agreement) as an amendment to the original Agreement to authorize the purchase of vehicles up to the aggregate amount of $100,000.00. Mr. Casto, the president of Milford Motors, drafted the Supplemental Agreement. The Supplemental Agreement is signed by the Debtor, who is identified as Dealer. Although it appears on the face of the Supplemental Agreement that the Debtor was licensed as the automobile dealer, the 1998–1999 dealer licenses were held in the corporate names of Paradise and Paradise of Estero and not by the Debtor, individually. (Debtor's Exhs. 1 and 2). Pursuant to the Supplemental Agreement, the Debtor, as Dealer, agreed to pay for the vehicles purchased within forty-five days of the purchase, plus administration fees and eighteen percent interest per vehicle. (Creditor's Exh. 2).

Mr. Casto, the president of Milford Motors testified that he believed that he drafted the Supplemental Agreement. He also testified that in referring to "dealer," he was not referring to Paradise or Paradise of Estero, the entities that had the authority from the State of Florida to buy and sell vehicles. (T–53).

It is without dispute that under the Agreement and the Supplemental Agreement, Milford Motors delivered numerous vehicles to Paradise. (Creditor's Exh. 6). The vehicles would be paid for by checks issued by Paradise's corporate account. (T–34–37). Milford Motors maintained an inventory list of vehicles at the Paradise

lots. The name of Paradise appears at the top of the inventory list. (Debtor's Exh. 6)

Milford Motors did not receive payment as provided under the Agreement and the Supplemental Agreement. Of the twenty-one vehicles delivered to Paradise, five vehicles were returned to Milford Motors upon default in payment. The other vehicles were sold out of trust. Milford Motors is still in possession of the titles for the vehicles that are missing from the Paradise lots. (T–40).

On December 29, 1998, the Debtor signed three checks from the corporate checking account of Paradise, made out to Milford Motors as payee: (1) $6,321.35 for payment for a 1994 Chevrolet; (2) $6,849.50 for payment for a 1995 Toyota; and (3) $9,201.48 for payment for a 1996 GMC Sonoma. The checks were dishonored and returned by the bank for insufficient funds.

On January 26, 1999, the Debtor filed his voluntary Petition for relief under Chapter 13 of the Bankruptcy Code.

Milford Motors filed Proof of Claim No. 35, asserting a general unsecured claim in the amount of $82,900.00. Claim No. 35 amends previously filed Claim Nos. 15 and 32. The amount of the claim is based upon those vehicles that were not returned to Milford Motors and for which Milford Motors has not been paid. The values attributed to the vehicles are the amounts that Milford Motors actually paid for the vehicles.

The Debtor filed an Objection to Claim No. 35 on January 20, 2000, stating that the documents attached to Claim No. 35 were insufficient to support the allowance of the claim. He argues that the debt is a corporate debt of Paradise and/or Paradise of Estero and that he is not personally liable to Milford Motors in any amount. The Debtor testified that he never agreed to be personally responsible for the debts of Paradise. T–61.

Milford Motors argues that the Debtor is personally liable because he signed the Agreement, Supplemental Agreement, and the corporate checks without any indication that he was signing these documents as a representative of Paradise. Further, Milford Motors contends that its position is bolstered by the fact that the Debtor filled out a Credit Application and signed corporate checks without identifying his corporate capacity.

■ Parol evidence is admissible in those cases in which an ambiguity is found on the face of the instruments regarding the capacity in which the person had signed. *See Newport Seafood, Inc. v. Neptune Trading Corp.,* 555 So.2d 376, 377 (Fla. 3rd DCA 1989) (citations omitted). Here, there is no question that both agreements are ambiguous. The Agreement is ambiguous because while the title to the Agreement names the Debtor as a party, the body of the Agreement does not. Although the Debtor signed the Agreement without referencing his corporate representation, none of the provisions contained within the body of the Agreement place any duties or obligations upon the Debtor in his individual capacity. The Supplemental Agreement is ambiguous because it does not reflect whether the borrower is Paradise or the Debtor. Thus, the intent must be gleaned from oral testimony and any documentary evidence that might shed light on their intent.

Mr. Casto testified that he believed that Milford Motors was conducting business with the Debtor and Negronski in their individual capacities. He stated that that is the reason why he requested and obtained personal financial statements of the Debtor and Negronski and not the corporate financial statement of Paradise.

On the other hand, the Debtor testified that he never agreed to be personally liable to Milford Motors. The Supplemental Agreement contains signature lines for Milford Motors and "Dealer." Although the Debtor signed the Agreement, he is not an automobile dealer. The State of Florida, Department of Highway Safety

and Motor Vehicles Dealer Licenses for the year 1998 – 1999 are issued in the names of Paradise Motor Sales, Inc. and Paradise Motors of Estero, Inc. Debtor's Exhs. 1 and 2. The Supplemental Agreement provides that Milford Motors may take possession of the vehicles upon default in payment and that it is the automobile dealer who is responsible for the deficiency. Further, the Debtor points out that it was Paradise that applied for the line of credit and not the Debtor. The Credit Application is clearly an application by Paradise. Although Debtor and Negronski furnished the requested personal background information about themselves on the Application, nothing in the Credit Application reflects that the Debtor and Negronski were applying for a line of credit in their personal capacities or that they were guarantying the obligations of Paradise.

Milford Motors argues that the checks reflect that the Debtor is personally liable for this debt. The checks were drawn on the corporate checking account of Paradise, but signed by the Debtor without identifying that he was signing the checks in his representative capacity. Section 673,4021, Florida Statutes, effective January 1, 1993, provides in part:

> . . .
>
> (3) If a representative signs the name of the representative as drawer of a check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check, the signer is not liable on the check if the signature is an authorized signature of the represented person.

Pursuant to the express language of the Statute, the Debtor cannot be held personally liable to the extent that he signed checks that identify the corporate account.

■ However, when viewing all of the documents together in order to determine the Debtor's liability, the documents reflect the parties' intention that the Debtor would be personally liable. The docu-ments show that Milford Motors contracted with one corporation, Paradise, and two individuals. All of the documents are signed in an individual capacity and no representative capacity is shown. The bodies of the agreements do not indicate that Paradise is to be solely liable.

It is difficult for this Court to accept the Debtor's proposition that Milford Motors extended credit up to an amount of $100,000 to Paradise. The Debtor signed the Supplemental Agreement in his individual capacity and the fact that the signature line refers to the signatory as "Dealer" is irrelevant. What is relevant is that Milford Motors requested the personal financial statements of the Debtor and Negronski but not the corporate financial statement of Paradise. This fact strongly indicates Milford Motors' intent to look to the Debtor and Negronski for the obligations under the Agreement and Supplemental Agreement.

This Court is satisfied that the parties intended and both the Debtor and Negronski understood that the Debtor and Negronski would be personally liable for the vehicles purchased. The documents, including the checks, may be indicative of corporate obligations. However, the totality of the circumstances belies that proposition.

■ Pursuant to 11 U.S.C. § 502(a), a proof of claim filed in proper form is deemed allowed, unless a party in interest objects. Fed.R.Bankr.Pro. 3001(f) provides that a proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure shall constitute prima facie evidence of the validity and amount of the claim. The burden then shifts to the debtor to show that the claim is incorrect. Only if the debtor meets the burden of responding to the prima facie validity of the creditor's properly filed claim does the burden shift back to the creditor to prove the existence and amount of the claim. *See In re Vines,* 200 B.R. 940, 948 (M.D.Fla.1996). The Debtor

failed to meet his burden and his Objection should be overruled.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Objection to Claim No. 35 be, and the same is hereby overruled and Claim No. 35 is hereby allowed.